FILED
2021 Jan-25  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SONYA LYNN FARLEY, as the Administratrix of the ESTATE OF DAVID M. FARLEY;** } } } } } | |
| **Plaintiff,** } } } } | |
| } } **v.** } | **Case No.:  2:19-cv-01845-MHH** |
| **CITY OF TARRANT, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

The defendants in this wrongful death action have asked the Court to dismiss Ms. Farley's amended complaint.  (Docs. 34, 35, 40, 41).  The case concerns David Farley's suicide shortly after the police officers who arrested him placed him in the City of Tarrant's jail.  Ms. Farley contends that the officers who interacted with Mr. Farley ignored his known history of mental health issues, failed to conduct a proper mental health or medical screening before placing him in a cell, and failed to follow

1

proper protocol after his initial suicide attempt minutes before he successfully took his life.

Ms. Farley contends that the City of Tarrant and its police chief may be held liable for Mr. Farley's death.  After answering Ms. Farley's initial complaint, (Docs. 1, 10), the City and the police officers who Ms. Farley named in that complaint now contend that Ms. Farley's claims in her amended complaint are implausible and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  (Docs. 10, 34, 35).  The officers who Ms. Farley added as defendants in her amended complaint also have moved to dismiss Ms. Farley's claims against them pursuant to Rule 12(b)(6).  For the reasons below, the Court denies the motions to dismiss.

## Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Under Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Generally, to meet the requirements of Rule 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level."  *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell*

2

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the factual allegations in the complaint and construes the factual allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). The Court reviews Ms. Farley's factual allegations accordingly.

### Factual Allegations in Ms. Farley's Amended Complaint

Ms. Farley alleges that several officers from the Tarrant Police Department arrested Mr. Farley on August 1, 2018 for a minor criminal violation. (Doc. 24, p. 7, ¶¶ 19-20). She identifies Officers Phillip George, Michael Voss, Johnathan Page, and Michael Morris as the arresting officers. (Doc. 24, pp. 2–4, ¶¶ 6, 7, 8, 12). According to Ms. Farley, these officers knew Mr. Farley suffered from mental illness and depression and had attempted suicide in the past. (Doc. 24, pp. 7–8, ¶¶ 20, 31).

After his arrest, the officers brought Mr. Farley to Tarrant's municipal jail where he was placed in a cell with video monitoring.  (Doc. 24, p. 7, ¶ 21).  Before the officers put him in the cell, they did not screen Mr. Farley for medical conditions or suicidal tendencies, as required by Tarrant's Standard Operating Procedure.  (Doc. 24, p. 7, ¶ 22).  Ms. Farley alleges that Officers Morris, Jenkins, Butler, and Tarrant police dispatchers Keith Borrell and Crystal Davenport were responsible for screening and monitoring new arrestees.  (Doc. 24, pp. 3–5, ¶¶ 10-14).

Within five minutes of officers placing him in a cell, Mr. Farley removed his shirt, wrapped it around his neck, tied the shirt to a shelf in the cell, and tried to hang himself.  (Doc. 1, p. 7, ¶ 24).  Video footage shows that three minutes later, Sergeant Voss and Officer Morris entered Mr. Farley's cell and spoke with him.  (Doc. 24, p. 8, ¶ 25).  Sergeant Voss and Morris "took [Mr.] Farley's shirt, removed the toilet paper dispenser, and left the cell . . . ."  (Doc. 24, p. 8, ¶ 26).  Less than 10 minutes later, Mr. Farley removed his pants, created a noose, and hung himself on a wall pipe in his cell.  (Doc. 24, p. 8, ¶ 27).  Sixteen minutes after Mr. Farley hung himself, Sergeant Voss and Officer Morris reentered Mr. Farley's cell and tried to save him, but it was too late.  (Doc. 24, ¶¶ 27-29).  Mr. Farley was unresponsive and pronounced dead in his cell.  (Doc. 24, p. 8, ¶ 29).  Fewer than 45 minutes elapsed between the time officers placed Mr. Farley in his cell and his death.  The Jefferson

County coroner determined Mr. Farley died of affixation due to strangulation. (Doc. 24, p. 8, ¶ 30).

On August 4, 2020, Ms. Farley, as the administratrix of Mr. Farley's estate, sued the City of Tarrant, Tarrant Police Chief Dennis Reno, Tarrant Police Lieutenant Phillip George, Tarrant Police Sergeant Matthew Voss, Tarrant Police Officer Jonathan Page, and three fictitious defendants. (Doc. 1, pp. 2–5, ¶¶ 5–12). These defendants answered Ms. Farley's complaint. (Doc. 10). They admitted that Mr. Farley was arrested on August 1, 2018, taken to Tarrant's municipal jail, booked, and placed in a cell equipped with video monitoring; that Mr. Farley took off his shirt and Tarrant officers entered his cell and took Mr. Farley's shirt away from him; that Mr. Farley used his pants to hang himself; that officers re-entered Mr. Farley's cell, and that Mr. Farley died of asphyxia by hanging. (Doc. 10, pp. 4–5, ¶¶ 14, 16, 19–25). The defendants denied the balance of Ms. Farley's factual allegations. (Doc. 10).

In her amended complaint, Ms. Farley added as defendants Tarrant Police Officers Morris, Jenkins, and Butler, and Tarrant Police Dispatchers Keith Borrell and Crystal Davenport. (Doc. 24, pp. 3–5, ¶¶ 10–14). These defendants, along with the City, Chief Reno, Lieutenant George, Sergeant Voss, and Officer Page, now move to dismiss the amended complaint. (Docs. 34, 35, 40, 41).

## Discussion

### *Shotgun Pleading*

All defendants except the City argue that the Court should dismiss Ms. Farley's amended complaint because Ms. Farley "impermissibly lump[s] all defendants together in shotgun style" and fails to follow Rule 8(a)(2). (Doc. 35, pp. 6–9; Doc. 40, pp. 4–6; Doc. 41, pp. 5–6). Rule 8(a)(2) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court may characterize a complaint as a "shotgun pleading" when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. Of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). When a complaint is fairly characterized as a "shotgun pleading," defendants should "make motions for more definite statements or courts [] demand repleader—and not, as the case were, to dismiss a complaint with prejudice." *Bailey v. Janssen Pharm., Inc.*, 288 Fed. Appx. 597, 603 (11th Cir. 2008).

Ms. Farley's amended complaint is not fairly characterized as a shotgun pleading. Ms. Farley specifies that Lieutenant George, Sergeant Voss, and Officers Page and Morris were Mr. Farley's arresting officers. (Doc. 24, pp. 2–4, ¶¶ 6–8, 12). She asserts that two dispatchers, Mr. Borrell and Ms. Davenport, and Officers Morris, Jenkins, and Butler were responsible for screening inmates and monitoring

6

inmates after they were placed in cells. (Doc. 24, pp. 3–5, ¶¶ 10–14). Ms. Farley alleges that Chief Reno was "responsible for properly supervising and overseeing the job performances of [officers and employees of the Tarrant Police Department] under his supervision." (Doc. 24, p. 3, ¶ 9). More specifically, Ms. Farley alleges that Chief Reno "was responsible for insuring that employees followed proper procedures with respect to the inmates in their care, custody and control; and for properly following those procedures himself when exposed to inmates. Chief Reno was also responsible for setting the custom and policy of the TPD and Tarrant Jail to be followed by TPD officers, like those named [in the Complaint]." (Doc. 24, p. 3, ¶ 9).

Ms. Farley has explained each defendant's role in arresting Mr. Farley, screening him, and/or monitoring his cell, the details of his two suicide attempts, and the way he died. She alleges that Tarrant police officers knew of Mr. Farley's history of mental illness and yet did not act to protect him, even after the first suicide attempt. (Doc. 24, p. 7, ¶ 20; Doc. 24, p. 8–10, ¶¶ 25–27, 42–44). In each count of her amended complaint, she has identified the defendants against whom the count is directed. These allegations satisfy Rule 8(a)(2)'s pleading requirement and sufficiently put the defendants on notice of the specific claims against them. The original defendants' answer proves the point. The Court rejects the defendants' procedural attack on the complaint.

***State Law Claims***

Several defendants argue that the Court should dismiss Ms. Farley's state-law claims because all non-wrongful death claims abated with Mr. Farley's death. (Doc. 34, p. 12; Doc. 35, p. 15). True enough, ALA. CODE § 6-5-462, the "survivorship statute," provides that "an unfiled tort claim does not survive the death of the person with the claim." *Malcolm v. King*, 686 So. 2d 231, 236 (Ala. 1996) (citing ALA. CODE § 6-5-462). But, in her amended complaint, Ms. Farley has properly pleaded wrongful death claims under Alabama law.

When it enacted Alabama's wrongful death statute, the Alabama Legislature created "a cause of action unknown at common law." *Pollard v. H.C. Partnership*, --- So. 3d ---, 2020 WL 1226488, at *3 (Ala. 2020) (citing *Downtown Nursing Home, Inc. v. Pool*, 375 So. 2d 465 (Ala. 1979)). The action is statutory. "To pursue a wrongful-death action, there must be, (1) within two years of the decedent's death, (2) a personal representative duly appointed by a probate court, with letters testamentary or letters of administration issued thereupon, and (3) the filing of a civil action alleging wrongful death." *Pollard*, 2020 WL 1226488, at *10 (Bolin, J., concurring specially).

Ms. Farley's state-law wrongful death claims meet all three criteria. Mr. Farley died on August 1, 2018, and Ms. Farley filed this lawsuit on November 13, 2019, well within the two-year window for a wrongful death action. (*See* Doc. 1).

8

Ms. Farley is acting as Mr. Farley's personal representative. And Ms. Farley alleges that the defendants' conduct caused Mr. Farley's death. (Doc. 24, pp. 18, 21). Therefore, Ms. Farley has pleaded a wrongful death action under ALA. CODE § 6-5-410(a).

And to adequately plead an Alabama wrongful death claim, the representative of the decedent's estates must identify the legal theory under which she contends a defendant may be held responsible for the decedent's death. A sample wrongful death complaint appended to the Alabama Rules of Civil Procedure illustrates the point. *See* SAMPLE CIVIL FORM 31, COMPLAINT FOR WRONGFUL DEATH, PERSONAL INJURIES, https://judicial.alabama.gov/docs/library/rules/cvsam31.pdf (last visited Dec. 9, 2020). Ms. Farley has done precisely that in Counts IV and V of her amended complaint. To the extent that she requests an award of compensatory damages in those counts, the Court strikes the requests because a wrongful death plaintiff who proves her claims may recover only punitive damages under Alabama law. *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007) ("the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff"); *see also Cherokee Elec. Co-op. v. Cochran*, 706 So. 2d 1188, 1193 (Ala. 1997) ("The determination of damages in wrongful death cases is governed by § 6-5-410, Ala.Code 1975, which authorizes punitive damages but does not authorize compensatory damages.").

*The City of Tarrant's § 1983 Municipal Liability*

The City argues that Ms. Farley has not stated a plausible claim of municipal liability "because [she] does not allege facts which plausibly establish that the claimed constitutional deprivation (*i.e.* the suicidal death of [Mr.] Farley while in Tarrant's jail) was the result of the execution of any custom or policy of Tarrant which was the moving force behind the alleged deprivation." (Doc. 34, p. 6). The City asserts that the complaint is devoid of any specific factual allegations "which plausibly establish the existence of the required official policy." (Doc, 34, p. 6). The City also argues that "a single alleged constitutional violation, in isolation, is simply inadequate to support even an inference of unofficial custom or policy of tolerating the claimed constitutional violations." (Doc. 34, p. 10).

Municipalities may not be held liable under § 1983 for the acts of city employees under the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Instead, to hold a city liable under § 1983, a plaintiff must prove that he was deprived of a federally protected right by the tortious act of a city employee who acted "pursuant to official municipal policy." *Monell*, 436 U.S. at 691. To assert a claim against the City of Tarrant, Ms. Farley must allege that Mr. Farley's constitutional rights were violated, that the City of Tarrant has a custom or policy

that constituted deliberate indifference to his constitutional rights, and the policy or custom caused the constitutional violation. *McDowell*, 392 F.3d at 1289.

For purposes of *Monell* liability, a policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A municipality can be liable when 'a series of decisions by a subordinate official manifest[s] a 'custom or usage' of which the supervisor must have been aware.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).

Beyond policy and custom, a city may be held liable under § 1983 for the acts of its police officers if police training is inadequate, and "the failure to train amounts

to 'deliberate indifference to the rights of persons with whom the police come into contact.'" *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*¸ 151 F.3d 1346, 1350–51 (11th Cir. 1998).  There are two ways of doing this:

> A plaintiff may demonstrate notice by showing a "widespread pattern of prior abuse" or even a single earlier constitutional violation. *Gold*, 151 F.3d at 1351.  But a plaintiff must also demonstrate that constitutional violations were likely to recur without training. *Id.* at 1352 n. 12.  In some cases, the need for training is so obvious that deliberate indifference can be established even without an earlier violation or pattern of abuse. [*Board of Cnty. Comm'rs v.*] *Brown*, 520 U.S. [397,] 409, 117 S. Ct. 1382[, 1391 (1997)].  Still, it must have been obvious that the municipality's failure to train or supervise its employees would result in a constitutional violation. *Id.*

*City of Miami*, 637 F.3d at 1189.

Here, Ms. Farley alleges facts that enable her claim against the City to proceed.  She asserts that City officers knew of Mr. Farley's mental illness but did not follow City protocol when they brought him to the Tarrant jail, failed to screen him, saw him attempt suicide by hanging and the did not follow the proper procedures to prevent his second, successful suicide attempt within an hour.  The need for proper procedures and training on how to address inmates with mental illness is so obvious that the City's deliberate indifference could be established

12

without an earlier violation or pattern of abuse.  The Court also takes judicial notice of the fact that the City of Tarrant has a population of approximately 6,100, a small enough population that officers very well may, as Ms. Farley alleges, have been familiar with Mr. Farley's mental health concerns and his prior suicide attempts. TARRANT   CITY,   ALABAMA,   UNITED   STATES   CENSUS   BUREAU, https://www.census.gov/quickfacts/fact/table/tarrantcityalabama/AGE295219  (last visited Jan. 19, 2021).[1]

Ms. Farley also alleges that the City "had a policy or custom of not properly monitoring, supervising, transferring, counseling, funding or assessing mental disorders of pretrial detainees . . . ."  (Doc. 24, p. 15, ¶ 58).  So, Ms. Farley also alleges a policy or custom by which the City may be found liable under *Monell*. Accordingly, the Court will deny the City's motion to dismiss Ms. Farley's § 1983 claim.

### Chief Reno's § 1983 Supervisory Liability

Chief Reno argues that Ms. Farley's § 1983 supervisory liability claims against him should be dismissed because she "does not allege facts which plausibly establish any personal conduct or participation by Reno in the alleged misconduct,

---

[1] "The court may judicially notice a fact that is not subject to reasonable debate because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Courts may take judicial notice of census data. *See United States v. Phillips*, 287 F.3d 1053, 1055 n.1 (11th Cir. 2002); *Hollis v. Davis*, 941 F.2d 1471, 1474 (11th Cir. 1991).

or any causal connection between some act of his and plaintiff's alleged constitutional violation." (Doc. 35, p. 9). Ms. Farley alleges that Chief Reno "established, created, condoned, ratified and encouraged customs, policies, patterns and practices that directly and proximately caused the deprivation of the civil and constitutional rights of [Mr. Farley]." (Doc. 24, p. 12, ¶ 51). Ms. Farley explains that these "written and unwritten policies, customs, patterns and practices included" inadequate screening, monitoring, and supervision of people in custody, inadequate hiring, lack of medical care at the jail, "[a] pattern and practice of ignoring detainees' requests and needs for medical and/or psychiatric treatment, including the need for proper medications, and/or of providing unreasonable and patently insufficient treatment for detainees' conditions[,]" inadequate critical incident and mortality reviews, and "inadequate identification and correction of serious deficiencies in policy and practices affecting the delivery and quality of medical and psychiatric services." (Doc. 24, pp. 12–14, ¶ 53). According to Ms. Farley, Chief Reno "acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights to life and safety of [Mr. Farley]." (Doc. 24, p. 14, ¶ 54).

Like the City's alleged § 1983 municipal liability, Ms. Farley sufficiently pleads Chief Reno's § 1983 supervisory liability. As Chief Reno correctly explains, "[t]he requisite causal connection [for deliberate indifference] can be established in one of three ways: (1) 'when a history of widespread abuse puts the responsible

14

supervisor on notice of the need to correct the alleged deprivation, and he fails to do so'; (2) 'when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights'; or (3) 'when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and fail[ed] to stop them from doing so.'"  (Doc. 35, p. 11) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).  At the motion to dismiss stage, Ms. Farley sufficiently alleges that Chief Reno's custom or policy with respect to mentally ill jail detainees resulted in deliberate indifference to Mr. Farley's constitutional rights.  Therefore, the Court will deny Chief Reno's motion to dismiss Ms. Farley's § 1983 supervisory liability claim against him.

### Conclusion

For the reasons above, the Court denies the motions to dismiss.  Because the Court denies the motions to dismiss, the defendants' joint motion to suspend discovery is moot.  (Doc. 53).  The Court asks the Clerk to please term Docs. 34, 35, 40, 41, and 53.

**DONE** and **ORDERED** this January 25, 2021.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

15